**In re Glenda McMILLAN, Debtor.**

**No. 99–31700.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 26, 2000.

Byron F. Latter, Flint, MI, for Debtor.

Bruce R. Redman, Bloomfield Hills, MI, for Household Finance Corporation III.

Carl L. Bekofske, Flint, MI, Chapter 13 Trustee.

### OPINION SUSTAINING OBJECTIONS OF TRUSTEE AND HOUSEHOLD FINANCE CORPORATION III TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

ARTHUR J. SPECTOR, Chief Judge.

The Trustee and Household Finance Corporation III ("HFC") object to confirmation of Debtor's Chapter 13 plan, on the ground that one of the plan provisions improperly seeks to invalidate HFC's mortgage on Debtor's principal residence without filing an adversary proceeding. HFC objects to confirmation on the additional basis that the mortgage-invalidating provision violates 11 U.S.C. § 1322(b)(2) [1] by impermissibly seeking to modify its rights, which are secured only by its mortgage on Debtor's principal residence. The Court sustains the objections and denies confirmation of the plan because the referenced provision violates §§ 1325(a)(1) and (a)(5), 1322(b)(2), and F.R.Bankr.P. 7001(2) and 3007.

### I. Facts

On September 25, 1997, HFC loaned Glenda McMillan ("Debtor") $8,203.45 and she signed a note to HFC for this amount and secured the obligation solely with a mortgage on her primary residence. According to HFC, Debtor used the proceeds of this loan to pay off an unsecured debt to another creditor in the principal amount of $6,969, which was incurred for the refacing of Debtor's kitchen cabinets. HFC further contends that the loan proceeds were not used for any improvements to the home. Contrary to HFC's assertions, however, Debtor "believes" that HFC

---

1. Except where otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

made the loan in consideration for, and as a direct result of her having her kitchen cabinets refaced pursuant to a solicited home improvement sale. *[Debtor's] Brief in Response to Household Finance Corporation III Objection to Confirmation,* p. 1. It is undisputed that Debtor irregularly made payments on its loan from October of 1997 until August 17, 1999, when she filed for relief under Chapter 13.

Debtor scheduled HFC as a holder of a *disputed* claim for $8,203.45 secured by a "[second] lien on Debtor's residence" that is valued at $27,000.[2] In her plan, filed August 31, 1999, Debtor seeks to use the confirmation process to disallow HFC's claim and invalidate its mortgage. Specifically, a plan provision entitled **"Rejection of [HFC's] Lien on Debtor's Residence and the Debt it Secures"** (emphasis in original) provides:

On *September 25, 1997,* [HFC] obtained a mortgage on Debtor's home for the sum of $8,203.45. To the best of Debtor's knowledge said mortgage was placed on Debtor's home in consideration for refacing the cabinets in Debtor's kitchen. The estimated value of said home improvement is $800.00 or less and two of the cabinet doors are falling off.

The Debtor rejects this mortgage as a violation of the *Home Improvement Finance Act (MICH. COMP. LAWS 445.1101)* in that the contractor failed to deliver to Debtor, at the time of [sic] contract was executed, a copy thereof in accordance with the provision of the Act. Therefore according to the Act the buyer shall not be obligated to pay.

Confirmation of the Plan shall therefore constitute a finding that this debt is disallowed and shall be paid nothing. Upon confirmation of the Plan, [HFC] or its assigns shall be required to file a Discharge of Mortgage. If it refuses or fails to execute and file said discharge of mortgage, this Chapter 13 Plan accompanied with Order Confirming Plan may be recorded with the Genesee County Register of Deeds and used in lieu of such discharge of mortgage.

(Plan at 3 (emphasis in original).)

On October 5, 1999, HFC filed a proof of claim for the $8,203.45 remaining balance that it asserts Debtor still owes on the note. A copy of the promissory note and the mortgage were attached to the proof of claim. Debtor did not file an objection to HFC's proof of claim.

HFC has stipulated that, as set forth in the plan at pages one through two, at the time of the filing of the Chapter 13 petition, the value of Debtor's primary residence was $27,000, and that Ottaco, Inc. holds a $12,827 claim secured by Debtor's residence. Both the Trustee and HFC filed objections to confirmation of the plan.

## II. Discussion

### A. Section 1325(a)

In order for Debtor's plan to be confirmed, Debtor must prove by a preponderance of the evidence that it satisfies each of the requirements of § 1325(a). *Hardin v. Caldwell (In re Caldwell),* 895 F.2d 1123, 1126 (6th Cir.1990); *In re Hogue,* 78 B.R. 867, 872 (Bankr.S.D.Ohio 1987) ("As the proponents of their respective plans, debtors bear the burden of proving that the requisite tests for confirmation outlined in § 1325(a) of the Code have been met."); *In re Luchenbill,* 112 B.R. 204, 208 (Bankr.E.D.Mich.1990) (applying § 1225(a), which contains language identical to § 1325(a), and explaining that "[t]he debtor has the burden of proof to establish each of the elements for confirmation of a Chapter 12 plan"). Because Debtor's Plan does not meet the criteria of § 1325(a)(1) and (a)(5), it cannot, and therefore will not, be confirmed. Specifically, under § 1325(a)(1), to be confirma-

---

**2.** Although the indicated information appears on Schedule D opposite the listing of "Beneficial," another secured creditor, it is clear that this is an error and that the information pertains to HFC.

ble, a debtor's Chapter 13 plan, must comply with the provisions of Chapter 13, and the other applicable provisions of the Bankruptcy Code. However, Debtor's Plan violates both §§ 1325(a)(5) and 1322(b), and thus likewise violates § 1325(a)(1). Section 1325(a)(5) provides:

> Except as provided in subsection (b), the court shall confirm a plan if ... with respect to each **allowed secured claim** provided for by the plan—
>
> (A) the holder of such claim has accepted the plan;
>
> (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5) (emphasis added). HFC has an allowed secured claim for $8,203.45. *See infra* pp. 489–90. Since it has objected to confirmation of the plan, HFC plainly did not accept it. The plan does not require Debtor to surrender the property securing HFC's claim. And the plan does not provide for payment of the full value of the allowed amount of HFC's claim and retention of its mortgage. Rather, the plan provides for no payment on HFC's allowed secured claim, invalidation of HFC's mortgage, and Debtor's retention of the property securing HFC's claim. Debtor's plan fails to use any of the available options under § 1325(a)(5).

### B. Section 1322(b)

█ The plan's mortgage-invalidating provision also violates § 1322(b)(2). This section prohibits the inclusion of any provision in a Chapter 13 plan that would modify the "rights" of creditors whose claims are secured solely by a mortgage on a debtor's primary residence. It provides:

> Subject to subsections (a) and (c) of this section, the plan may ... modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence,** or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2) (emphasis added). In *Nobelman v. American Savings Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court held that the "rights" of a mortgagee referred to in § 1322(b)(2) are those "reflected in the relevant mortgage instruments which are enforceable under [state] law." In *Nobelman*, the mortgage instruments at issue were a deed of trust and a promissory note which provided for

> the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.

*Id.* The *Nobelman* Court held that "[t]hese are the rights that were 'bargained for by the mortgagor and the mortgagee,' and are rights protected from modification by § 1322(b)(2)." *Id.* at 329–30, 113 S.Ct. 2106 (quoting *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)).

Here, the pertinent instruments are the note and mortgage. HFC's "rights" under the note and mortgage include: the right to repayment of the principal in monthly installments of $117.65 over 180 months at a 15.5% interest rate; the right to hold the hazard insurance policies that Debtor is required to maintain and their renewals, subject to mortgages, liens pursuant to security agreements, and deeds of trust with priority over its mortgage; the right to collect insurance proceeds if Debtor abandons the property and, at its option,

to either apply those proceeds to Debtor's outstanding debt secured by the mortgage or to repair and restore the property; the right to accelerate the loan upon Debtor's breach of any of the terms of the note or mortgage; the right to foreclose on and sell the property subject to the mortgage; the right to purchase the property at a sale; and the right to require Debtor to take such actions necessary to assure that its mortgage will continue unimpaired in the event Debtor defaults but desires to reinstate the mortgage notwithstanding HFC's acceleration of the balance of the loan. Without question, the mortgage-invalidating provision of the plan seeks to modify all of these bargained for rights by extinguishing them completely. Through this provision, Debtor is seeking to have HFC's claim disallowed and the mortgage securing its claim rendered void, thereby precluding both its right to collect the principal and interest on the debt and its right to all of the indicated remedies for which HFC contracted in the event Debtor should fail to pay the sums secured by the mortgage. The mortgage-invalidating provision of the plan is a clear violation of § 1322(b)(2) unless: (1) Debtor comes forward with evidence that HFC's contract rights are unenforceable under Michigan law of sufficient probative value "to meet, overcome, or at least equalize, what operates in favor of [HFC] by force of section 502(a) and [F.R.Bankr.P. 3001(f) ]," and (2) after Debtor meets her initial burden, HFC fails to carry its ultimate burden of persuasion that its claim is valid. *In re Premo*, 116 B.R. 515, 518 (Bankr. E.D.Mich.1990) (relying on 3 *Collier on Bankruptcy*, ¶ 502.01[3] (15th ed.1989)); *DeLorean v. Allard* (*In re DeLorean Motor Co. Litigation*), 59 B.R. 329, 336 (E.D.Mich.1986) ("[A proof of claim] is strong enough [evidence] to carry over a mere formal objection without more."). However, Debtor cannot present evidence in opposition to HFC's proof of claim and have the Court render a decision on the matter in the context of a confirmation hearing. Rather, Debtor must commence an adversary proceeding to determine the validity of HFC's mortgage and the claim it secures.

## C. Adversary Proceeding Required

■ F.R.Bankr.P. 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien, or other interest in property, other than a proceeding under Rule 4003(d)" is an adversary proceeding governed by Part VII of the Bankruptcy Rules. F.R.Bankr.P. 7003, by making F.R.Civ.P. 3 applicable to adversary proceedings, in turn, requires the filing of a complaint to commence an adversary proceeding. In *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92–93 (4th Cir.1995), the court held that Rule 7001(2) prohibits debtors from eliminating or otherwise modifying a lien in bankruptcy without taking the appropriate affirmative step of filing an adversary proceeding. Relying on *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the *Cen–Pen* court explained that if a debtor, as a proponent of a plan, fails to take the proper procedural steps set forth in the Bankruptcy Rules to avoid a creditor's lien, including the filing and serving of a complaint and summons on the creditor, the general rule is that the lien passes through the bankruptcy unaffected. *Cen–Pen*, 58 F.3d at 92–93. *See also In re Beard*, 112 B.R. 951, 955–56 (Bankr.N.D.Ind.1990) (distinguishing adversary proceedings from contested matters and stating that "if a secured claim is challenged due to questions concerning the validity of a lien (the existence or legitimacy of the lien itself), its priority (the lien's relationship to other claims to or interests in the collateral), or its extent (the scope of the property encompassed by or subject to the lien) an adversary proceeding is required"); *Brady v. Andrew* (*In re Commercial Western Finance Corp.*), 761 F.2d 1329, 1336–38 (9th Cir. 1985) (The Bankruptcy Rules require the trustee to file an adversary proceeding against those creditors whose security interests he seeks to avoid, and prohibits the trustee from avoiding security interests

through his motion to confirm the Chapter 11 plan.);[3] 10 *Collier on Bankruptcy* ¶ 7001.03[1], at 7001–11 (15th ed. rev.2000) ("[A] lien may not be invalidated over the objection of the lienholder as part of a plan of reorganization. An adversary proceeding is necessary for such purpose.").

Here, the validity of HFC's mortgage is directly at issue. Debtor argues that HFC's claim and the mortgage securing it are invalid because HFC violated Mich. Comp.Laws §§ 445.1101–445.1431 ("Home Improvement Finance Act"). On the other hand, HFC argues that its claim and mortgage are valid and that the mortgage was obtained in compliance with applicable Michigan and federal law. HFC contests Debtor's statement of the facts underlying the disputed loan transaction. It also disputes Debtor's conclusions of law that the Home Improvement Finance Act is applicable to this transaction and that HFC violated Michigan law in making its loan to Debtor. If the facts are found to be as HFC advances, the Home Improvement Finance Act is likely not even applicable and so cannot serve as a basis for disallowing HFC's claim or rendering HFC's mortgage void and it contract rights unenforceable.[4] Because this dispute concerns the validity of HFC's mortgage, Rule 7001(2) requires it to be resolved in the context of an adversary proceeding.

F.R.Bankr.P. 3007 likewise requires Debtor to commence an adversary proceeding to determine the validity of HFC's mortgage. Rule 3007 provides, in relevant part, that "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Debtor did not file a formal objection to HFC's secured proof of claim. But even if one were to analogize the plan provision to a formal objection to claim, because Debtor's objection was joined with a demand for the Court to invalidate HFC's lien, Rule 3007 mandates that the issue be resolved in an adversary proceeding.

Because Debtor did not file an objection to HFC's proof of claim, the claim is "deemed allowed" under § 502(a). Section 502(a) provides, in relevant part, that "[a] claim or interest, proof of which is filed under section 501 of this title,[5] is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Since HFC's proof of claim concededly complies procedurally with the applicable Bankruptcy Rules, the proof of claim is "prima facie evidence of the validity and amount of the claim." F.R.Bankr.P. 3001(f). Pursuant to § 506(a), HFC's claim is fully secured. Section 506(a) provides, in relevant part, that

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

---

3. Although the *Commercial Western* court applied F.R.Bankr.P. 701–782, which were superseded by the Bankruptcy Rules which became effective on August 1, 1983, and in particular, Rule 701, the court explained that Rule 701 was equivalent to the new F.R.Bankr.P. 7001 and even used the Advisory Committee Note to Rule 7001 to support its holding. *See Commercial Western,* 761 F.2d at 1336 & n. 14. Moreover, the *Cen–Pen* court, applying Rule 7001, cited *Commercial Western* in support of its holding that, under the Bankruptcy Rules, an adversary proceeding is the proper procedure to challenge the validity of liens. *See Cen–Pen,* 58 F.3d at 93. For these reasons, and because the Court agrees

that, for all intents and purposes, the two rules are the same, *Commercial Western* is instructive on this procedural issue.

4. *See* Mich.Comp.Laws § 445.1102(*l*)(v) excluding from the definition of "Home improvement installment contract," to which the Home Improvement Finance Act pertains, loans "contracted for or obtained directly by the retail buyer from the lending institution, person, or corporation."

5. Section 501 provides, in relevant part, that "a creditor ... may file a proof of claim."

It is agreed that the value of the property securing HFC's claim is $27,000 and that the only prior lien on that property is in the amount of $12,827. This leaves $14,173, which is more than enough value to accord HFC a fully secured allowed claim for $8,203.45. Debtor thus has no basis to avoid HFC's mortgage under § 506(d), which can be accomplished without an adversary proceeding. *See In re Jones,* 152 B.R. 155, 161 (Bankr.E.D.Mich.1993) ("F.R.Bankr.P. 3012 expressly permits § 506 valuations to be requested by motion, and the advisory committee note relating to that rule distinguishes valuation proceedings from those subject to F.R.Bankr.P. 7001."). Because HFC has a fully secured allowed claim until the Court holds otherwise as a result of an adversary proceeding, § 1322(b)(2) prohibits Debtor from modifying HFC's rights as a holder of a secured claim. *See supra* part II.B. Therefore, since Debtor's Plan was not an objection to HFC's proof of claim, the proof of claim controls and Debtor's mortgage-invalidating provision cannot be given effect.

### III. An Additional Consideration

An additional reason why the plan is inconsistent with the provisions of Chapter 13 is that it purports to effectuate irrevocable lien avoidance as a consequence of plan confirmation, as opposed to full compliance by Debtor. *See Jones,* 152 B.R. at 181–82 & n. 35 (holding that the debtors could not invalidate the creditors' liens until completion of their confirmed plan because "lien avoidance should await plan consummation").

### IV. Conclusion

For the foregoing reasons, the Court will enter an order sustaining the objections of the Trustee and HFC and denying confirmation of Debtor's plan.