**In re Daniel Wilbur BENNETT and Sandra Faye Bennett, Debtors.**

**In re John W. Johnson and Kathy S. Johnson, Debtors.**

**In re James W. Parker and Tiffany M. Parker, Debtors.**

**In re Glenndell A. Simpson, Debtor.**

**In re William James Snodgrass and Mary J. Snodgrass, Debtors.**

Nos. 04–40564, 04–40593, 04–40403, 04–40319, 04–40002.

United States Bankruptcy Court, W.D. Kentucky.

July 26, 2004.

David M. Taylor, Owensboro, KY, Septtimous Taylor, Septtimous Taylor, Attorney at Law, Owensboro, KY, Jennifer E. Spreng, Harrington, Fowler & Spreng, Owensboro, KY, for Debtors.

## MEMORANDUM ON MOTIONS TO AVOID

DAVID T. STOSBERG, Chief Judge.

These cases came before the Court on the motions to avoid liens filed by the debtors in the above-named cases. In each of the motions, the debtors seek to strip off the lien of the second lienholder by operation of 11 U.S.C. § 1322. "Stripping off" a lien is a variant of "stripping down" a lien. The distinguishable characteristic is that in a strip off, the entirety of the lien is negated while in a strip down, the partially secured lien is bifurcated and only the unsecured portion is removed. In these cases, no creditor objected to the proposed strip off. While the authority to strip off wholly unsecured second lienholders is undisputed, some question remains as to the methodology. If either the procedural mechanism used is defective, or the notice to the creditor is inadequate, the property will remain subject to the lien for the entire amount rather than vesting free and clear after the plan is completed and the debtors receive their discharge. There are at least four methods in which the liens in question could be stripped off: 1) through plan provisions; 2) through an adversary proceeding; 3) through a claim objection; and 4) through motion practice. Having compared and analyzed the separate methods, as set forth *infra*, the Court has elected to adopt motion practice.

Several of the debtors argue that they should be able to accomplish lien stripping through the provisions of a Chapter 13 plan. Debtors used this method in the *Lane* case. *In re Lane*, 280 F.3d 663 (6th Cir.2002). In *Lane*, the Sixth Circuit af-firmed the debtors' rights to strip off wholly unsecured junior lien interests. Unfortunately, the *Lane* decision did not specifically address the propriety of the procedural mechanism utilized by the debtors. The debtors in the current cases argue that service of a copy of the Chapter 13 plan or reorganization which proposes to strip off a lien at confirmation is sufficient to protect the due process rights of the junior lienholders, citing *In re King*, 290 B.R. 641 (Bankr.C.D.Ill.2003) and *In re Hill*, 304 B.R. 800, 805 (Bankr.S.D.Ohio 2003). These courts hold that since the operative Code section involved with lien stripping is § 1327(c), which is effective only upon confirmation, debtors may accomplish the stripping of the unsecured liens through a plan provision and confirmation. Other courts have reached the same result by treating the proposed plan as a de facto motion. *In re Hoskins*, 262 B.R. 693 (Bankr.E.D.Mich.2001); *In re Fuller*, 255 B.R. 300, 306 (Bankr. W.D.Mich.2000).

■ While not all courts agree on the correct procedure, there does seem to be some consensus that an adversary proceeding is not required. *See, e.g., In re Sadala*, 294 B.R. 180, 183–85 (Bankr. M.D.Fla.2003); *Dickey v. Beneficial Fin. (In re Dickey)*, 293 B.R. 360, 362–63 (Bankr.M.D.Pa.2003); *King*, 290 B.R. at 645–47; *In re Nowling*, 279 B.R. 607, 609–11 (Bankr.S.D.Fla.2002); *In re Hoskins*, 262 B.R. 693, 696–97 (Bankr.E.D.Mich. 2001); *In re Hudson*, 260 B.R. 421, 433 (Bankr.W.D.Mich.2001); *In re Fuller*, 255 B.R. 300, 305–06 (Bankr.W.D.Mich.2000) (all holding an adversary proceeding is not required to strip off wholly unsecured liens). *But see In re Pierce*, 282 B.R. 26, 28 (Bankr.D.Utah 2002); *In re Kressler*, 252 B.R. 632, 634–35 (Bankr.E.D.Pa.2000) (all requiring an adversary proceeding).

■ Federal Rule of Bankruptcy Procedure 7001(2) requires an adversary proceeding if a party wishes "to determine the validity, priority, or extent of a lien or other interest in property." "Validity" for purposes of Fed. R. Bankr.P. 7001(2) means the existence or legitimacy of the lien itself. "Priority" means the lien's relationship to other claims or interests in the collateral. Finally, "extent" means the scope of the property encompassed by or subject to the lien. *In re Millspaugh,* 302 B.R. 90 (Bankr.D.Id.2003) *citing In re King, supra.* *See also In re Hoskins,* 262 B.R. 693, 696–97 (Bankr.E.D.Mich.2001) and *In re Hudson,* 260 B.R. 421, 433 (Bankr.W.D.Mich.2001).

■ Under these definitions, clearly "validity" and "priority" are not implicated by the debtors' proposed strip off. *Hoskins,* 262 B.R. at 696 (lien stripping "has nothing to do with the 'validity' or 'priority' of [the mortgage]"); *Hudson,* 260 B.R. at 433. While an argument could be made that lien stripping requires a determination of the extent of the lien, this Court joins the majority of courts in rejecting such a broad interpretation. Lien stripping requires a valuation determination of the subject property. As discussed in greater detail *infra,* valuation matters are designed to be addressed under motion practice via Fed. R. Bankr.P. 3012. "Extent," as used in Rule 7001(2), does not refer to collateral valuation, but rather concerns identification of the collateral to which a lien attaches. *Hudson, supra* at 429 (wherein Judge Gregg held the "extent" of a lien is not synonymous with the value of collateral). Accordingly, no adversary proceeding is required and Rule 7001(2) is not triggered when a debtor seeks to value an allegedly wholly unsecured claim against a residence for the purpose of stripping off a lien. An adversary proceeding would be required, however, if a debtor also sought to contest the validity, extent, or priority of the lien.

■ As with an adversary proceeding, an argument could be made that any attempt to strip off an allegedly wholly unsecured lien also requires a claim objection pursuant to Fed. R. Bankr.P. 3001(f) which provides that a properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. We note, however, that the claims resolution process outlined in § 501 and Fed. R. Bankr.P. 3001 concerns only the amount of the allowed claim under § 502. It does not address the extent an allowed § 502 claim is an allowed secured claim under § 506(a). *In re Hill,* 304 B.R. 800, 804 (Bankr.S.D.Ohio 2003). While Fed. R. Bankr.P. 3001(f) does grant prima facie status as to the validity and amount of a claim, it does not grant prima facie status as to the value of a particular piece of collateral. The claims allowance process gives prima facie proof only to the amount of the entire claim, but does not determine the amount of the secured portion of a claim under § 506(a). *In re Duggins,* 263 B.R. 233, 238 (Bankr.C.D.Ill.2001) ("The bifurcation or valuation process contemplated by 11 U.S.C. § 506(a) is not properly part of the claims allowance process."). To determine the amount of the secured portion of a claim, the Court must value the property.

■ Having rejected the requirement of an adversary or claim objection, and acknowledging that there is precedent allowing lien stripping through a plan, this Court will allow debtors to effectuate lien stripping through motion practice pursuant to Fed. R. Bankr.P. 3012. The core tenet of lien stripping is a valuation of the subject property. Rule 3012 states that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion

of any party in interest." Fed. R. Bankr.P. 3012. In addition to falling under the provisions of Rule 3012, lien stripping through motion practice provides sufficient due process safeguards.

Stripping off a creditor's lien involves a taking which mandates the basic due process requirement of proper notice. As the Supreme Court held in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), to comport with due process requirements, notice must be reasonably calculated to bring to the party's attention the nature and substance of the pending determination, and it must afford a reasonable time in which to respond. So long as the debtor files the motion seeking strip off in sufficient time to be heard with confirmation, the creditor will have more than enough time to respond. The motion must be filed with the Chapter 13 plan, which under Fed. R. Bankr.P.2002(b)(2), grants parties at least 25 days notice of the hearing to consider confirmation of a Chapter 13 plan. In the cases at bar, all creditors received sufficient time to respond to the debtors' motions and no creditor responded.

The "nature and substance" portion of the notice requires debtors to provide sufficient information and description to enable the creditors to understand that the debtors intend to strip off their lien. To accomplish this goal, the motion should, at a minimum, specifically identify the name of the creditor and specifically identify the subject real property. The legal description of the property should be provided. The motion should clearly and unequivocally state that the debtor intends to strip off that creditor's security interest on the real property and treat that creditor's claim as unsecured. Finally, the motion should state the basis for the lien stripping is a lack of equity in that the first mortgage balance exceeds the property's value and include calculations to support this conclusion. *In re King*, 290 B.R. 641, 649–650 (Bankr.C.D.Ill.2003) (setting forth similar requirements for lien stripping through proposed Chapter 13 plans); *In re Fuller*, 255 B.R. 300, 306–07 (Bankr. W.D.Mich.2000). If each of these elements are included, that creditor will have received sufficient information to garner the nature and substance of the debtor's proposed treatment. The debtors bear the burden to ensure that the language of the motion provides adequate notice of the debtor's intentions and the basis for the proposed lien strip off. The debtors also bear the burden to serve the motion upon the creditor in the manner required under the Rules. Fed. R. Bankr.P. 9014(b) incorporating Rule 7004. A certificate of service reflecting compliance with Rule 7004 should be filed by the debtor evidencing proper service. The Court reiterates to debtors' counsel the absolute importance of these two requirements. Insufficient information or inadequate notice will mean the secured property will remain subject to the unsecured lien rather than vesting "free and clear" as permitted by § 1327(c).

To conclude, debtors may strip off wholly unsecured liens may through a Rule 3012 valuation motion and need not file an adversary proceeding. Ordinarily debtors should file the motion with the plan of reorganization and expect a resolution at the confirmation hearing. Such motions must contain sufficient information to alert lienholders of the proposed disposition of the unsecured lien and must be served in accordance with the Rules. In the cases at bar, the lienholders, which were alleged to be wholly unsecured, were served with the motion to strip off in compliance with Fed. R. Bankr.P. 7004. Each motion contained sufficient information to

adequately apprise the lienholders of the nature and the substance of the debtors' intentions. Under these circumstances, the Court finds the motions and notice sufficient to satisfy any due process concerns. Accordingly, the motions to avoid liens will be granted and, should the debtors complete their Chapter 13 plan and receive a discharge, the property will vest in the debtors free and clear of these particular liens. Should the debtors fail to complete their plan and receive a discharge, upon dismissal of the bankruptcy case any lien avoided will be reinstated pursuant to § 349(b)(1)(C) of the Bankruptcy Code. Likewise, should the case be converted to Chapter 7, any lien avoided will also be reinstated as this type of lien stripping is prohibited in Chapter 7. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). *See also In re McDonough,* 166 B.R. 9 (Bankr.D.Mass. 1994) (holding that lien stripping does not survive after conversion to Chapter 7). The Trustee shall tender orders of confirmation forthwith incorporating the holding of this Memorandum.

An Order will be entered this same date in accordance with the holding of this Memorandum.

### ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

**IT IS ORDERED** the junior unsecured liens on each of the properties listed in the debtors' separate motions to avoid are avoided thereby rendering each creditor's claim an unsecured claim.

**IT IS FURTHER ORDERED** the Chapter 13 Trustee shall tender orders of confirmation which includes language reflecting this holding and further provides

the legal description of the real property on which the liens were avoided.